UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JULIE K. BECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:09-CV-268 CAN |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On June 17, 2009, Plaintiff Julie K. Beck ("Beck"), filed her complaint in this Court. On November 16, 2009, Beck filed an opening brief, and she asks this court to enter judgment in her favor or remand this matter to the Commissioner. On February 3, 2010, Defendant, Social Security Administration ("SSA"), filed a response. On February 11, 2010, Beck filed her reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, motions, the administrative record, and the briefs of the parties.

**I.   PROCEDURE**

On October 14, 2004, Beck filed an application for disability insurance benefits ("DIB"). On the same date, Beck also filed an application for supplemental security income ("SSI"). In both applications, Beck alleged disability beginning July 1, 2000. Beck claims she is entitled to benefits pursuant to Title XVI and Title II of the Social Security Act. See 42 U.S.C. §§ 216(I), 223; 42 U.S.C. §§ 1611, 1614. Beck's application was initially denied and again upon reconsideration.

On September 12, 2007, Beck appeared at a hearing before an Administrative Law Judge ("ALJ"). On May 23, 2008, the ALJ found Beck was not disabled because she could perform

her past relevant work. Additionally, the ALJ found that Beck could perform a significant number of jobs despite the limitations caused by her impairments. In particular, the ALJ found that Beck had not engaged in substantial gainful activity since July 1, 2000. Moreover, the ALJ found Beck to have severe impairments of depression and anxiety. However, the ALJ found that Beck did not have any impairments that met the listed impairments in 20 C.F.R. app. 1, subpart P. § 404.

In the instant case, the ALJ found that Beck had a residual functional capacity sufficient to perform a restricted range of work. Specifically, the ALJ stated that Beck: (1) could not perform work that imposes close regimentation of production, (2) that close and critical work supervision would produce unacceptable distress, and (3) would be unable to perform work that imposes intense contact with the public or strangers.

Based on this finding, the ALJ determined Beck could perform her past relevant work as a forklift operator, coating machine operator, label applicator, press operator, and data entry clerk. Similarly, the ALJ found Beck could perform other jobs that exist in significant numbers in the national economy. Thus, the ALJ determined that Beck was not disabled. Accordingly, the ALJ denied Beck's applications for DIB and SSI.

On July 7, 2008, Beck appealed the ALJ's decision to the Appeals Council. On May 28, 2009, the Appeals Council denied review of the ALJ's decision; and, as a result, the ALJ's decision became the Commissioner's final decision. See 20 C.F.R. § 404.981, Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on June 17, 2009, Beck filed a complaint in this Court seeking review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## II. ANALYSIS

### A. Facts

Beck was 37 at the time of the alleged onset of disability and was 45 at the time of the ALJ's decision. Beck has a high school education, and her past relevant work includes shipping & receiving, data entry, forklift operator, press operator, and label applicator. Beck alleged that she suffered primarily from mental limitations. For example, Beck reported that she suffered from major depressive disorder, anxiety disorder, bipolar disorder, and panic disorder. Beck alleged a disability onset date of July 1, 2000.

Beck testified that she suffered from severe depression, anxiety, and panic attacks. Additionally, Beck stated that she suffered as many as two panic attacks per week; and, as a result, she spent a substantial amount of time in her room. Beck testified that she intentionally avoided personal interaction and similarly avoided shopping if at all possible. Further, Beck testified that she did not drive and relied upon the assistance of her son for transportation. Beck reported that she took Zoloft for dizziness, Diclosac for back pain, and Prilosec for her stomach. Beck stated that she rarely cooked for herself and was often unable to care for her daughter. Finally, Beck testified that she had been in an abusive romantic relationship which had a negative effect on her depression and anxiety.

For treatment of her depression, anxiety, and panic disorders, Beck primarily saw Dr. George Merkle ("Dr. Merkle") from approximately April 2000 until the time Beck filed her complaint in this Court.

1. <u>Dr. Merkle</u>

On April 6, 2000, Beck first consulted with Dr. Merkle regarding problems with anxiety and depression. Several months later, Dr. Merkle provided approximately three months of sample anti-depressants to Beck and recommended she take a medical leave of absence.

On September 10, 2002, Beck again consulted with Dr. Merkle regarding depression and anxiety related issues. Dr. Merkle reported that during the examination Beck was visibly depressed and cried a great deal. Dr. Merkle noted that while Beck's general physical condition was good, Beck would likely be unable to engage in substantial gainful activity due to her anxiety and depression. Accordingly, Dr. Merkle prescribed Zoloft for a period of time.

On August 18, 2003, Beck returned to Dr. Merkle for consultation. Dr. Merkle diagnosed Beck as suffering from major depressive disorder and bi-polar disorder. Dr. Merkle again observed that Beck would likely qualify for disability due to her psychiatric problems. Dr. Merkle subsequently referred Beck to several mental health professionals to assess her mental functioning.

2. <u>Non-Treating Physicians</u>

   a. <u>Dr. Fischer</u>

On August 21, 2003, pursuant to a state agency request, Beck reported to Dr. Fischer for a consultative mental status examination. During the examination, Dr. Fischer observed that Beck was shaking, fidgety, and anxious. However, Dr. Fischer also noted that Beck was attentive and cooperative. Dr. Fischer diagnosed Beck with panic disorder, generalized anxiety disorder, dysthymic disorder, and cyclothymia. Further, upon examination, Dr. Fischer gave Beck a GAF score of 50.

On June 21, 2005, Dr. Fischer performed a subsequent evaluation. Beck reported to Dr. Fischer that she suffered from anxiety when leaving her home and complained of back pain. Dr. Fischer subsequently diagnosed Beck with generalized anxiety disorder and assigned Beck a GAF score of 65.

      b.     Dr. Roy

On March 15, 2005, Dr. Roy administered Beck the Minnesota Multiphasic Personality Inventory ("MMPI") in conjunction with a mental status examination. Dr. Roy noted that Beck's responses to the MMPI indicated either confusion or exaggeration of symptoms and distorted responses. Accordingly, Dr. Roy concluded that the MMPI results were invalid. Additionally, Dr. Roy stated that she was unable to perform further formal testing. As a result, Dr. Roy noted that she was unable to determine more specific information about Beck's psychiatric disorders. Further, Dr. Roy stated that her diagnostic impression was major depressive disorder and generalized anxiety disorder.

On January16, 2006, Beck again met with Dr. Roy. Dr. Roy observed that Beck continued to suffer from depression and anxiety. Similarly, Dr. Roy noted that Beck wanted to sleep excessively, had low energy, and was easily overwhelmed. Dr. Roy again reported that her diagnostic impression was major depressive disorder and generalized anxiety disorder. Further, Dr. Roy recommended regular therapy and medication management with a mental health specialist.

On December 14, 2006, Beck consulted with Dr. Roy for a psychological examination. Dr. Roy observed that Beck was crying, stressed, overwhelmed, and seemed unable to make decisions. Dr. Roy noted that Beck seemed to seek medical treatment during times of crisis.

Further, Dr. Roy reported that her diagnostic impression continued to be major depressive disorder and generalized anxiety disorder.

   c.  Dr. Babcock

On March 25, 2004, Beck underwent a consultative psychological examination with Dr. Babcock. Dr. Babcock diagnosed Beck as suffering from depressive disorder and anxiety disorder. In addition, Dr. Babcock noted that Beck appeared to be exaggerating the severity of her symptoms. Dr. Babcock observed that he was unable to determine if Beck's panic attacks amounted to a limiting condition because Beck engaged in a number of regular daily activities. Upon examination, Dr. Babcock determined Beck's GAF score to be 60.

  B.  Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Further, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

  C.  Beck's Motion for Summary Judgment or Remand

To be entitled to benefits under the Social Security Act, Beck must establish that she

was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352.

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

The major issues this Court must resolve are: (1) whether Beck's mental impairments meet the 12.04B listing for affective disorders, and (2) whether the ALJ's decision is based on substantial evidence and sufficiently articulated.

> 1. <u>The ALJ's determination that Beck's mental impairments do not meet Listing 12.04:Affective Disorders is supported by substantial evidence</u>.

First, Beck asserts that the ALJ erroneously rejected treating physician Dr. Merkle's medical opinion. Beck argues that the ALJ was required to give controlling weight to Dr. Merkle's opinion and that failure to do so is reversible error. Specifically, Beck argues that had the ALJ given controlling weight to Dr. Merkle's opinion, the ALJ would have found that Beck met or exceeded Listing 12.04:Affective Disorders.

An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. <u>Hofslien v. Barnhart</u>, 429 F.3d 375, 376 (7th Cir. 2006); <u>Clifford v. Apfel</u>, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p; S.S.R. 96-2p. More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); <u>Clifford</u>, 227 F.3d at 870. However, medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. <u>Id</u>. When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence that the ALJ must consider. <u>Hofslien</u>, 429 F.3d at 377. Regardless, an ALJ's decision must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p. An ALJ must minimally articulate his

reasons for crediting or rejecting evidence of disability, and failure to do so constitutes error. Clifford, 227 F.3d at 870.

In the instant case, the ALJ observed that treating physician Dr. Merkle's opinion was brief, conclusory, and infringed upon a determination reserved for the Commissioner of Social Security. In addition, the ALJ noted that Dr. Merkle was a family physician and not an expert in psychology or psychiatry. The ALJ also observed that Dr. Merkle, by his own admission, was not qualified to render a valid psychological opinion. Finally, the ALJ noted that Dr. Merkle did not provide relevant medical evidence to support his finding of complete disability due to mental impairments. Accordingly, the ALJ concluded that Dr. Merkle's medical opinion would receive limited weight.

This Court concludes that the analysis performed by the ALJ is sufficient to create the logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. Here, the ALJ noted that Dr. Merkle qualified as Beck's treating physician. In addition, the ALJ noted that Dr. Merkle opined on several occasions that Beck was likely disabled and precluded from substantial gainful activity. Subsequently, the ALJ outlined and briefly explained the various reasons for affording Dr. Merkle's opinion limited weight. For example, the ALJ rejected Dr. Merkle's finding of disability because he did not provide relevant medical evidence necessary to support this finding. Similarly, the ALJ based his decision on the conclusory nature of Dr. Merkle's opinion. While somewhat brief, the ALJ's discussion of the evidence provides the necessary minimum articulation of the ALJ's reasoning. Clifford, 227 F.3d at 870. Accordingly, this Court finds that the ALJ's decision to limit the weight given to Dr. Merkle's opinion is sufficiently articulated and supported by substantial evidence.

Next, Beck alleges the ALJ ignored and rejected evidence that supported her claim of disability. In particular, Beck argues that the ALJ ignored favorable testimony by witnesses and several reports by examining psychologists. However, Beck does not specify which reports the ALJ is alleged to have ignored. Beck asserts that had the ALJ properly considered all relevant evidence, the ALJ would have found that Beck met Listing 12.04.

While an ALJ has a duty to make a complete record, that duty can only reasonably require so much. Sheck v. Barnhart, 357 F.3d 607, 702 (7th Cir. 2004). The difficulty is that no record is entirely complete, one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on. Indeed, taking the requirement to deliver a complete record literally would become a formula for paralysis. Kendrick v. Shalala, 998 F.2d 455, 456 (7th Cir. 1993). An ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2001). Instead, an ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability, and failure to do so constitutes error. Clifford, 227 F.3d at 870. In addition, the claimant is responsible for providing evidence to show how their impairment affects their functioning along with any other information that is needed to decide the disability claim. 20 C.F.R. 404.1512(c).

In conducting his analysis, the ALJ specifically referred to the testimony of both Beck's son and her friend. The ALJ noted witness testimony to the effect that Beck suffered from social anxiety and had little or no friends. In addition, the ALJ examined and discussed medical evidence and reports from Dr. Fischer, Dr. Yordy, Dr. Roy, and state psychologists. The ALJ noted the opinion of each psychologist, discussed the medical findings of each report, and

10

assessed the weight given to the various opinions.

As such, this Court concludes the ALJ sufficiently developed the evidentiary record and did not ignore an entire line of evidence favorable to Beck. The ALJ took reasonable steps to sufficiently develop the record and Beck cannot fault the ALJ for her own failure to support her claim for disability. Indeed, the ALJ discussed the findings and opinions of all examining psychologists and such development satisfies the minimum articulation required. Clifford, 227 F.3d at 870. This Court notes that the ALJ's review of the various psychologist opinions constitutes over four single spaced pages. As a result, this Court concludes that the ALJ's review of the witness testimony, medical evidence, and physician opinions is sufficient to create the requisite evidentiary support and logical basis for this court to uphold the determination. Haynes, 416 F.3d at 626.

Finally, Beck argues that the ALJ's finding of mild or moderate limitations under the category B criteria is not based on substantial evidence. Specifically, Beck argues that since the ALJ found Beck had severe mental impairments at step two, then logically at step three the requirements of Listing 12.04B would also be satisfied. As a result, Beck would accordingly meet the Listing and would be considered disabled.

At step two, the administrative law judge must determine whether the claimant has a medically determinable impairment that is severe, or a combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe within the meaning of the regulations if it significantly limits and individual's ability to perform basic work activities. 20 C.F.R. § 404.1521. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step. At step three, if the impairment meets any of the severe

11

impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. Listing 12.04 requires a depressive syndrome that results in at least four listed symptoms such as: (1) loss of interest in all activities, (2) psychomotor retardation, (3) appetite disturbance with a change in weight, (4) sleep disturbance, (5) feelings of worthlessness, (6) decreased energy, (7) thoughts of suicide, or (8) hallucinations and delusions. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04A. In addition to meeting the requirements of subpart A, a claimant must also satisfy the criteria of paragraph B. Paragraph B requires the claimant to show at least two of the following: (1) a marked restriction of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, and pace, and (4) repeated episodes of deterioration or decompensation in a work like setting. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04B. A marked limitation means more than moderate but less than extreme. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00.

In the instant case, the ALJ determined at step two that Beck suffered from severe impairments of depression and anxiety. The ALJ reasoned that Beck's impairments at step two caused more than minimal limitations in her ability to complete work related activity. Subsequently, at step three, the ALJ considered Beck's mental impairments under Listings 12.04 and 12.06. The ALJ made detailed findings as to activities of daily living, social functioning, concentration, and decompensation. The ALJ concluded that in social functioning Beck had moderate difficulties. However, in activities of daily living, concentration, and decompensation the ALJ found that Beck suffered from mild or no limitations. Accordingly, the ALJ found that Beck did not satisfy the requirements of the paragraph B criteria.

This Court finds that the ALJ's conclusion at step three is supported by substantial evidence. Beck's principal error is that she confuses the finding of a severe impairment at step two with the finding of marked impairments in the paragraph B criteria. At step two, an impairment that limits the claimant's ability to work is considered severe. 20 C.F.R. § 404.1521. However, the assessment of the paragraph B criteria at step three is separate and unrelated. The paragraph B criteria require findings of marked limitations in four separate categories distinct from the findings at step two. The requirements of the paragraph B criteria are also distinctly defined and are quite different from the required showing at step two. Accordingly, the ALJ could determine that Beck suffered from a severe mental impairment at step two and at the same time find that Beck did not satisfy the paragraph B criteria. Additionally, the ALJ specifically addressed the four paragraph B criteria, made findings in each category, and explained his reasoning for each conclusion. Such discussion of the evidence is sufficient to create a logical bridge and satisfies the minimum articulation required. Clifford, 227 F.3d at 870. Accordingly, this Court finds that the ALJ's conclusion at step three is supported by substantial evidence and sufficiently articulated.

> 2. The ALJ's decision to reject Dr. Merkle's testimony does not constitute "playing doctor and is supported by substantial evidence.

Finally, Beck alleges that the ALJ succumbed to the temptation of "playing doctor" by rejecting Dr. Merkle's opinion. In particular, Beck argues that under Bauer, despite the fact that Beck does not meet a specific disability Listing, a physician's opinion may still be used to demonstrate that Beck is unable to engage in substantial gainful activity. To this end, Beck asserts that Dr. Merkle's opinion is sufficient to establish that Beck is unable to engage in any substantial gainful activity and the ALJ erroneously rejected this opinion.-

An ALJ impermissibly "plays doctor" when making a conclusion regarding prognosis that is not supported by medical opinions in the record. Rohan v. Chater, 98 F.3d 966, 970-71 (7th Cir. 1996); Wilder v. Chater, 64 F.3d 335, 337 (7th Cir. 1995). An ALJ must not substitute her own judgment for a physician's opinion without relying on other medical evidence or authority in the record. Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990). However, a physician's judgment is not conclusive. Bauer v. Astrue, 532 F.3d 606, 609 (7th Cir. 2008). The ALJ "must minimally articulate her reasons for crediting or rejecting evidence of disability" and "build an accurate and logical bridge between the evidence and the result." Scivally v. Sullivan, 966 F.2d 1070, 1076 (7th Cir. 1992), Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996), 78 F.3d 305, 307 (7th Cir. 1996); McKinnie v. Barnhart, 368 F.3d 907, 910 (7th Cir. 2004) ("[t]he ALJ need not address every single piece of evidence in his decision, . . . but his analysis must build an accurate and logical bridge between the evidence and his findings"); Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir. 2000).

As stated previously, the ALJ thoroughly evaluated and discussed the medical evidence and records from Beck's physicians. The ALJ specified the weight given to each physician's opinion and explained the weight given to the evidence. As noted above, the ALJ gave limited weight to Dr. Merkle's opinion because it was brief, conclusory, and failed to set forth the supporting medical evidence. Similarly, the ALJ gave limited weight to Dr. Merkle's opinion because the final determination of disability is reserved for the Commissioner of Social Security. The ALJ also noted that Dr. Merkle has consistently been sympathetic and uncritical of Beck's claims.

This Court concludes that the ALJ did not impermissibly play doctor. As stated

previously, this Court concludes that the ALJ gave a sufficiently supported and articulated explanation as to why he discounted Dr. Merkle's opinion. The ALJ noted that Dr. Merkle's opinion was conclusory and did not indicate what medical evidence it was based upon. In addition, the ALJ observed that the final determination of disability is reserved for the Commissioner. Such discussion and analysis of the evidence does not constitute playing doctor. Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001) (cases remanded for playing doctor are those in which the ALJ fails to address relevant evidence). Further, this Court concludes that the ALJ did not substitute his judgment for a physician's opinion without relying on the evidentiary record. Beck is not entitled to benefits merely because her treating physician labels her as disabled, and medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence on the record. Dixon, 270 F.3d at 1177. In as much as Beck argues that Bauer controls, this Court notes that under the Bauer decision a physician's opinion is not conclusive. Bauer, 532 F.3d at 609. As noted above, the ALJ provided sufficient reasoning for rejecting Dr. Merkle's unarticulated finding of disability; and, thus, Bauer is satisfied. Therefore, this Court finds that the ALJ did not "play doctor" and his decision to reject Dr. Merkle's opinion is supported by substantial evidence.

### III.    Conclusion

For the aforementioned reasons, this Court finds the ALJ's conclusion that Beck did not meet Listing 12.04 is supported by substantial evidence and adequately articulated. Further, this Court finds that the ALJ sufficiently developed the record and did not ignore relevant evidence.

15

Finally, the ALJ's decision to limit the weight given to Dr. Merkle's opinion is supported by substantial evidence and does not constitute playing doctor. Therefore, Beck's motion for reverse or remand is **DENIED**. [Doc. No. 14]. Accordingly, this Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment if favor of the Commissioner.

    **SO ORDERED.**

    Dated this 1st Day of April, 2010.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge